Over v. Schiffling.

No. 11,815.

## OVER v. SCHIFFLING.

LIBEL.—*Communication to Employer.*—A letter, written voluntarily, and for the sole benefit of the writer, to another's employer, using language such as must have been understood by the employer as charging the employee with having obtained goods from the writer by fraudulent means, was held to be libellous, and not a privileged communication.

EVIDENCE.—*Offer of Proof.*—An offer of proof should not be so general as to require the court, for the purpose of determining what facts are competent, to examine a mass of previous evidence, but should specifically state competent facts which it is expected to show.

SAME.—*Statements of Stranger Binding on Party.*—One who has directed another to a third person, for information or direction, will be bound by the statements made by such third person.

SAME.—*Intent.*—Where the intent with which one has done an act becomes material, it is proper to ask him as a witness what was the intent.

SAME.—*Objection to Evidence.*—There can be no available error in admitting evidence over objection, where no ground of objection is specifically stated.

INSTRUCTION TO JURY.—*Court not Required to Modify Erroneous Instruction Asked.*—Unless an instruction asked is correct in terms as prayed, the court is not bound to modify it, but may refuse it.

PLEADING.—*General Scope.*—A pleading must be judged by its general scope and tenor, and not by fragmentary statements therein.

SAME.—*Plea of Justification.*—A plea of justification in an action for libel must proceed on the theory that all the material averments of the complaint are admitted.

PRINCIPAL AND AGENT.—*Ostensible Authority of Agent.*—If a principal holds out an agent as possessing authority to control a shop or place of business, and a third person acts upon the faith of the appearances so created, the principal may be bound by the acts of such agent within the scope of such ostensible authority, although, as between the agent and his employer, no such authority in fact existed.

LIBEL.—*Construction of Writing.*—*Justification.*—Whether a written instrument is or is not libellous, and what will constitute justification for a libellous publication, are questions for the court, and not for the jury.

From the Marion Circuit Court.

*H. Dailey* and *G. W. Winpenny,* for appellant.

*S. Claypool, W. A. Ketcham* and *B. F. Watts,* for appellee.

ELLIOTT, J.—The complaint of the appellee alleges that

the appellant maliciously published a libel; that the libellous matter was contained in a letter written by the latter to a corporation called the Encaustic Tile Company, by whom the appellee was then employed. The letter, omitting the date, address, signature and formal part, is as follows:

"Mr. Schiffling owes me on work done on your dies, etc., $33. If you would consent to retain such amount out of any money due him from you, let me know by return mail. If you will not consent to do so, I shall have to file a mechanic's lien on the goods. He got them of me by lying; first, he said he would bring an order from you, then he would pay cash for them before he took them away. He then watched his chances and took them when the foreman was not in, and now refuses payment."

It is also alleged that the appellee was dismissed from the service of the corporation to whom the letter was addressed, and he demanded special and general damages.

The language of the letter charges the appellee with having obtained property by corrupt and dishonest means. It is not necessary, in order to constitute even verbal slander, much less libel, that the charge that a corrupt or criminal act was committed should be made in direct terms. The question in such cases is, what meaning did the language employed convey to the mind of the person to whom it was addressed? *Seller* v. *Jenkins,* 97 Ind. 430. Words put in writing will often constitute a libel, which, if spoken, would not constitute actionable slander. We think it very clear that the corporate officers, who received and read the letter, must have understood that the writer charged the appellee with having obtained the property by fraudulent means, and, thus understood, the language was undoubtedly libellous. *Hake* v. *Brames,* 95 Ind. 161.

The letter was not a privileged communication. The information it professes to contain was volunteered, and the purpose for which it was conveyed to the appellee's employer was solely for the benefit of the writer, and was not intended

to benefit the employer by giving him, in good faith and for a just purpose, information necessary for his protection against a knavish servant.

The appellant introduced Samuel Shue, and after he had been examined in chief and had been cross-examined at great length and at the close of the re-direct examination, he was asked this question: "State whether or not you reported these facts in reference to this matter to Mr. Over?" Upon objection being made, the counsel made this statement: "We offer to show that this witness communicated all these facts to Mr. Over before the 15th day of June, the day the letter was written." In our opinion the offer was too general, for we do not believe it was the duty of the trial court to examine the mass of testimony to determine what facts were competent; on the contrary, we think it was counsel's duty to specifically state the facts which they expected to show that the witness communicated to their client. There were some facts stated in the testimony of the witness that it would not have been proper to communicate to the appellant, and the court was not bound to analyze the testimony and sift out the competent from the incompetent. This should have been done by the question and offer of the counsel.

The appellee testified that he was directed by the appellant to his foreman, Mr. Cox, and thereupon the court permitted the appellee to testify what was said to him by the foreman. In this there was no error. Where a party directs another to a third person for information or directions, he is bound by the statements of such third person.

Our cases decide that where the intent with which an act is done becomes material, it is proper to ask what it was. *City of Columbus* v. *Dahn*, 36 Ind. 330; *Greer* v. *State*, 53 Ind. 420; *White* v. *State*, 53 Ind. 595, vide p. 596; *Shockey* v. *Mills*, 71 Ind. 288 (36 Am. R. 196); *Parrish* v. *Thurston*, 87 Ind. 437, vide p. 440. We think that the question asked the appellee, and objected to by the appellant, is fairly within the principle

declared in these cases. It is competent in many cases, such as cases of fraud and the like, to ask a party a direct question, and we think this is an analogous case. So, too, where a negative is to be proved, it is often competent to ask a direct question. The reason for this is, that by proving affirmative facts to establish a negative conclusion, too much ground would be gone over and too much time consumed. Another reason is, that there are some cases where it is practically impossible to exclude every hypothesis by a course of affirmative questions, and, as the law is a practical science, it sometimes permits a direct question and answer upon a negative proposition.

If it were conceded that the court erred in permitting the appellee to inquire as to the aggregate amount in value of dies that had been made by the Encaustic Tile Company within a designated period, no available error was committed, for the reason that the grounds of objection were not specifically stated. But we think no error was committed, for the reason that the testimony tended to show the amount of the special damages sustained by the appellee.

The court refused to give the first instruction asked by the appellant, which reads thus: "The defendant in this cause, by his answer, admits that he wrote the letter which is alleged to be libellous, but says that the statements therein are true. By this answer the defendant only admits he wrote the letter; he does not admit that plaintiff was damaged thereby, or that he was in the employ of the Encaustic Tile Company; but the burden is on the plaintiff to show that he was in the employ of the Encaustic Tile Company, and that he lost said employment by reason of said letter, and that he has been damaged."

It is settled by many cases that unless the instruction as prayed is correct in terms, the court is not bound to amend or modify it, but may rightfully refuse it. *Goodwin* v. *State,* 96 Ind. 550, and authorities cited.

This instruction was not correct in terms, for the answer,

by not directly controverting the allegation of the complaint that the appellee was employed by the Encaustic Tile Company, admitted it, for the failure to deny is an admission of the truth of a material allegation. The general scope and tenor of the answer filed by the appellant is that of a plea of justification, and it is by its general scope and tenor that it must be judged, and not by fragmentary statements cast into it. *Kimble* v. *Christie*, 55 Ind. 140; *Neidefer* v. *Chastain*, 71 Ind. 363 (36 Am. R. 198); *Mescall* v. *Tully*, 91 Ind. 96; *Western U. Tel. Co.* v. *Reed*, 96 Ind. 195, *vide* auth. cited p. 198; *Cottrell* v. *Ætna L. Ins. Co.*, 97 Ind. 311; *City of Logansport* v. *Uhl*, 99 Ind. 531.

A plea of justification proceeds, and can only rightfully proceed, on the theory that all the material averments of the complaint are admitted, and this is the theory of the answer before us, and it would, therefore, have been error to instruct the jury that it controverted one of the substantive and material averments of the complaint.

What we have said proves that the court below did not err in instructing that the answer admitted that the appellee was in the employment of the Encaustic Tile Company, and that he was discharged from it. It is true that mere allegations of value are not admitted by a failure to controvert them, but allegations of material facts are, and the employment and discharge of the appellee were material facts.

The third instruction given by the court reads thus: "The answer, among other things, charges and says that the plaintiff went into the shop where the dies were, while the defendant's foreman was absent from the shop, and without the knowledge or consent of the defendant, or his foreman, took and carried said dies away from the shop and custody of the defendant. On this point I instruct you, that if the plaintiff called or sent for the dies, and if he or the person whom he sent found at the defendant's shop any one there in charge of the shop who delivered the goods or dies to the plaintiff, or to any one sent by him for the dies, the law will presume that

as between the public and the defendant, the person so deliv-ering the dies had authority to deliver the dies, whether as between him and the defendant he had authority or not, and if the plaintiff simply went for or sent after the dies, and got them from a person so in charge of the defendant's shop, the plaintiff did not get the dies away without the knowledge of the defendant within the meaning of the law, even though both the defendant and his regular foreman were absent from the shop at the time the dies were taken away. But if the plaintiff watched his chances and availed himself of an op-portunity to go for or send after the dies while the foreman was absent, for the purpose of getting possession without first paying for the dies, then that portion of the letter is proved true. On the other hand, if the plaintiff did not so watch his chances to get the dies away, but took the dies away with the consent of any one in charge of the shop, then in such case the defendant has failed to prove his letter true in that particular, even though the regular foreman was absent at the time the dies were taken away."

We perceive no substantial error in this instruction, al-though it is not very well drawn.

If the principal holds out an agent or servant as posses-sing authority to control a shop or place of business, and a third person acts upon the faith of the appearances so created, the principal may, in such a case as this, be bound by the acts of the apparent agent within the scope of his ostensible authority, although as between the agent and his employer no such authority in fact existed. It would, it is very clear, be unjust to impute sinister motives to a third person who had obtained an article from a person in charge of a shop without deceiving such person by false statements. We think it was proper to instruct the jury that it could not be inferred from the fact that appellee got the dies from the agent in charge of the appellant's shop, that he " had watched his chances," in the sense conveyed by that phrase as used in appellant's letter.

Counsel are in error in asserting that the instruction assumes to inform the jury who appellant's agent or foreman was. It does not assert that any particular person was or was not his agent or foreman, but simply asserts the general principle, that placing a person in charge of a shop constituted such a person, as to third persons, an agent for the performance of such duties as pertained to the authority of one who in fact was rightfully in charge of the shop. It left it to the jury to decide whether the person from whom the dies were obtained was or was not the one in whose charge the shop was at the time they were obtained.

If the appellant had desired specific directions given to the jury upon the subject of the effect of knowledge of private instructions given by the principal to the agent, he should have asked the court to specifically instruct upon that subject. We think the instruction before us is good as far as it assumes to go, and under long settled and often declared rules it must be sustained. *Union M. L. Ins. Co.* v. *Buchanan*, 100 Ind. 63.

Counsel assume that the plea of justification was, so far as that branch of it is concerned, made out by evidence that appellee secured the dies from one who had no authority to deliver them, and this we regard as an undue assumption. The question is not whether the appellee got the dies from a person having no authority to deliver them, nor whether he got them without paying for them, for the language of the letter clearly imputes to him a corrupt and dishonest purpose, and it devolved upon the appellant to prove that this was the appellee's purpose. Odgers Libel and Slander, 169.

A written instrument is to be construed by the court and not by the jury. It was for the court to instruct the jury as to whether the letter was or was not libellous. *Gabe* v. *McGinnis*, 68 Ind. 538; *Young* v. *Clegg*, 93 Ind. 371, auth. cited p. 374. It would, therefore, have been proper for the court to have even more explicitly instructed the jury than it

did as to what was necessary for the appellant to prove in order to constitute a justification.

The second instruction asked by appellant is not correct, for it asks the court to say to the jury that it was their exclusive province to determine from the evidence who, if any one, was authorized to deliver the dies to the plaintiff. As we have seen, the question of authority involved an element of law, and it would have been error to leave the whole question to the jury. It is evident that to give such an instruction would mislead the jury and induce in their minds the belief that they were to decide the whole question.

Judgment affirmed.

Filed April 24, 1885; petition for a rehearing overruled June 26, 1885.