No. 70.

## WILSON v. CLARK ET AL.

PRACTICE.—*Objection to Evidence.*—*Failure to Make.*—No question is presented on appeal touching the admissibility of evidence, if no objection is made to its reception at the time it is offered in the trial court.

FRAUD.—*Proof of Intent.*—Where the issue is whether certain property in dispute was sold with intent to cheat the creditors of the owners thereof, the person claiming the property by virtue of such sale may be asked if he had an intent to cheat, hinder, or delay such creditors in making the purchase.

From the Marshall Circuit Court.

*A. C. Capron*, for appellant.

*J. D. McLaren* and *E. C. Martindale*, for appellees.

ROBINSON, J.—This was an action of replevin. The answer was a general denial. Trial by the court; finding for the appellee. Motion for a new trial overruled and excepted to.

The third assignment of error is, that the court erred in overruling appellant's motion for a new trial.

The first, second and fourth assignments of error present no question that is not raised by the motion for a new trial. The causes assigned for a new trial are:

*First.* That the finding of the court is not sustained by sufficient evidence.

*Second.* That the finding of the court is contrary to the evidence.

*Third.* That the amount of damages found against defendant is excessive.

*Fourth.* Error of law occurring upon the trial, and excepted to by the defendant at the time, is this, to wit: The court erred in allowing the plaintiffs' attorney to ask Nathan F. Clark, a witness in his own behalf, the following question: "State how much plaintiffs were damaged per day by the seizure of the goods taken under the attachment by the defendant as sheriff; to which the witness answered: "We

were damaged $25 per day ; " and in allowing the following question to be asked Ozias Duddleson, a witness on behalf of the plaintiffs, and each of the plaintiffs' witnesses on his own behalf, to wit : " State if you had in your mind a fraudulent intention to cheat, hinder and delay the creditors of Ozias Duddleson when you were making the sale and purchase of the stock of goods levied on by the defendant as sheriff," to which all three witnesses answered : " No, we did not."

Before proceeding to the consideration of the motion for a new trial it is proper to say that on the 7th day of June, 1888, the South Bend Iron Works commenced an action in the Marshall Circuit Court against Ozias Duddleson on an account, and also proceedings in attachment upon the ground, as alleged in the affidavit, " that said Duddleson had sold and conveyed his property, subject to execution, with the fraudulent intent to cheat, hinder and delay his creditors." A proper bond was filed, and a writ of attachment was issued and placed in the hands of the appellant, who was sheriff of Marshall county, Indiana. The appellant executed the writ of attachment on the 14th day of June, 1888, and seized and took into his possession a stock of merchandise, consisting of hardware, farming implements, and other personal property. The appellees, claiming to be the owners of the property attached by the appellant, as such sheriff, commenced this action to recover said property. The claim of the appellant was that the sale of said property by said Duddleson to the appellees was fraudulent. The appellant claims, with much earnestness, that this case should be reversed under the first cause for a new trial ; that the finding of the court is not sustained by sufficient evidence, in fact, that there is no evidence to sustain the finding. The following is a fair and accurate statement of the facts, as shown by the evidence : Ozias Duddleson was, a few days before the 2d of June, 1888, and for some time prior thereto, engaged in the hardware and implement business, in Marmont, Marshall

county, Indiana, and was in embarrassed circumstances finan-
cially. A few days before the 2d day of June, 1888, the
sheriff of Marshall county, Indiana, levied an execution, in
his hands, on his stock of merchandise, consisting of hard-
ware, farming implements, and other goods, and closed his
store on the 2d day of June, 1888 ; while the store was still
closed and held by the sheriff, the appellees and Duddleson,
the appellee Dillon being Duddleson's brother-in-law, went
to Plymouth, the county seat of Marshall county, Indiana,
and went to the office of a law firm holding some of the lia-
bilities of said Duddleson, and while at this law office entered
into a written agreement by which Duddleson sold to appel-
lees his stock of merchandise, and all book accounts, subject
to a certain chattel mortgage, therein mentioned, to Hibbard
Spencer, and Bartlett, for $431.99, due in 30 and 45 days,
on said stock, and his book accounts, subject to a note for
$170.19, dated May the 18th, 1888, due in thirty days, pay-
able to A. F. Seebarge ; also, one note to Levi Lauer, for
$100, and one note for $11, executed to Hoag & Wade,
which three last notes were in the hands of said law firm,
to secure which said firm held certain collaterals which
were to be delivered to the appellees on full payment of said
notes.   There is nothing in the agreement showing what
consideration the appellees were to pay Duddleson ; but on
the 4th day of June, 1888, Duddleson and wife conveyed by
a warranty deed the lot upon which was situate the store
building, in the village of Marmont, Marshall county, Indi-
ana, subject to a certain mortgage thereon, for purchase-
money, which the evidence shows was unpaid as to the sum
of $900.

After this conveyance was made it appears by the evidence
that the stock of merchandise, accounts, and the town lot were
together estimated at $3,500, for which appellees assumed
and agreed to pay of the Duddleson indebtedness the sum of
$1,946.68, and executed to Duddleson their several promis-
sory notes for $1,500, due in one, two, three, four, five, six

and seven years, with six per cent. interest from date.     The first six were for $200 each, and the last one was for $300.

Upon the consummation of the agreement, appellees paid the execution that had been levied upon the stock of merchandise, and took possession of the same without taking any invoice, and also took possession of the store building and lot, and also got possession of the book accounts on payment of the notes for which they were held as collateral security. Duddleson had no other property than that sold to appellees. There was no evidence showing that the property had been sold at a reduced price, but for any thing that appears in evidence it would seem that the price agreed upon was very nearly the value of the property.

The notes for $1,500, made to Duddleson by the appellees as part consideration for the property, were, in two or three days after their execution, assigned and transferred by Duddleson to his sister, Miss Elizabeth Duddleson, who is a sister-in-law of the appellee Dillon, and resided with him.

The evidence does not show that there was any consideration for the assignment of the notes to Miss Duddleson, nor is any explanation attempted as to why it was done, or why the notes were made at such long payments.     A short time after the notes went into the possession of Miss Duddleson, Ozias Duddleson obtained from her three of the notes, being the first ones due, and paid a debt for $600 with them; this debt was merchandise purchased by Duddleson some months before the sale to the appellees, and was not a part of the indebtedness assumed by them, but at the time of the purchase was known to them, and Duddleson stated that he would pay it.     This debt is all the appellees claim they knew any thing about that they did not assume.     The amount of Duddleson's debts not assumed by the appellees, and exclusive of the $600 paid with the three notes, was less than $500, as the evidence shows, and was held by the parties to the attachment proceedings.

The appellees had paid the debts they assumed to pay as

they become due.  The evidence shows the appellees made inquiry as to indebtedness before they purchased the property ; that they acted upon Duddleson's assurance and statements regarding his indebtedness.  The evidence also shows that appellees had no experience in the business, but were wholly unacquainted with it, and from the surroundings it would appear that there was some haste in consummating the contract for the purchase of the property, although they spent an entire day in the law office at Plymouth before the contract was finally concluded.  There is no conflict in the evidence, nor was there any fraud shown in the transaction, unless fraud is made to appear from conclusions and inferences arising out of the nature and character of the transaction.

The foregoing statement contains all the material facts in evidence on the trial of the case.  It was tried by the court below, who, it is presumed from his acquaintance with all the surroundings of the case, and with the witnesses and all the circumstances as detailed in evidence, was better qualified to determine the questions of evidence before him than this court is, and while the case in some respects is not free from the claim that some of the circumstances and facts point to bad faith, yet we do not feel that we would be justified, under the evidence, in holding that the trial court erred in its conclusions as to the evidence.  The evidence tended to sustain the findings.

The third cause for a new trial is, that the amount of damages found against defendant is excessive.

The appellant contends that the court erred upon the trial relating to damages, in permitting appellees to ask of the witness Clark, on behalf of appellees, the following question :  " What was the value of the use of that stock to you during the time you were deprived of the use of it for the use of your business ?" and permitting the witness to answer the question.  There was no objection stated by the appellant at the time to the question, or the answer.  If the

question was erroneous there is no available error in the record. But upon the measure of damages, an examination of the evidence on that point, when taken together, does not show the damages to be excessive, but that the amount found was sustained by the evidence.

The fourth and last cause for a new trial is error of the court in permitting appellees' attorney to ask Ozias Duddleson, a witness on behalf of appellees, and Nathan Clark and L. Cass Dillon, the appellees and witnesses on their own behalf, the following question, to wit: "State if you had in your mind a fraudulent intent to cheat, hinder or delay the creditors of Ozias Duddleson when you were making the sale and purchase of the stock of goods levied on by defendant as sheriff;" to which all three witnesses answered: "We did not;" and in permitting said witnesses to answer said question.

The Supreme Court has frequently decided, "where the intent with which an act is done becomes material, it is proper to ask what it was." The fraudulent intent was the principal question in this action; the only objection to the question was as to the competency of the question. The question was competent and no error was committed by the court in allowing said question to be asked and answered. *Over* v. *Schiffling*, 102 Ind. 191, and numerous cases there cited.

There is no error in the case for which it should be reversed.

The case should be affirmed, and is affirmed, with costs.

Filed April 18, 1891.