HUNT *v.* STATE OF INDIANA.

[No. 29,187. Filed March 28, 1956.]

*Herbert L. Myers,* and *Fulmer & Myers,* (of Counsel), of Indianapolis, for appellant.

*Edwin K. Steers,* attorney general, and *Richard M. Givan,* Deputy Attorney General, for appellee.

EMMERT, J.—This is an appeal from a judgment on a verdict which found appellant guilty of murder in the first degree as charged in an indictment, and fixing his punishment at imprisonment for life. The error assigned is the overruling of appellant's motion for new trial.

The evidence, when viewed most favorably to the State, discloses the following:

Appellant and his wife Hester Hunt, were each 55 years of age, had been married since 1917, and on August 7, 1953, the date of the homicide, were residing at 1144 North Alabama Street in Indianapolis, where she operated a rooming house. They were not cohabiting as husband and wife though living in the same house, and she then had pending an action for divorce. Hunt had stated to one of the roomers that the decedent Forrest Gifford, who was an odd job man about the house, was breaking up his home and he was going to kill him. Both men were heavy drinkers, and at one time when drinking had had a fight in the kitchen. The decedent was about 50 years of age, and had a diseased condition of the neck which was accustomed to break and drain, and which he thought was a cancer. His bedroom was upstairs and numbered 7.

Appellant, the night before the killing, slept downstairs, but about 9 o'clock in the morning went upstairs to the decedent's room. Both had been drinking that morning, and shortly before noon appellant came downstairs and told his wife he had killed Gif, and asked his daughter to call the police, which was done, and a number of officers arrived shortly after 12 noon.

The decedent was found dead in his bedroom lying along the west wall between it and a bed. The inside of his right palm had been cut twice, one a deep gash almost to the bone, there was a stab wound on his left shoulder, one on his jaw and a number of stabs and cuts on his throat. Death was due to loss of blood from the severance of both the right and left internal jugular veins. He had been dead about two hours when the officers arrived, and the blood had congealed upon the floor. The officers found an open pocket knife on the

floor with blood thereon, and a butcher knife also on the floor, but with no blood on it. Appellant's shirt had several blood spots on it, and there were a few such spots on the bed. The officers took pictures of the decedent and the bedroom, and these were introduced in evidence.

Before the appellant was taken to police headquarters, in the presence of his wife and daughter, several of the police officers asked him if the pocket knife was his, to which he answered he did not know. One question was asked, "Did you stab the man upstairs?" and he answered, "I don't know, ask my wife." To other questions he answered, "Ask my wife."

At about two o'clock P. M. of the same day, the appellant, his wife and daughter were at police headquarters, where the officers asked appellant if he wanted to make a statement, and he said, "Ask my wife." His wife was then questioned in his presence, and the questions and answers typewritten and signed by her in appellant's presence. After these questions and answers were read to appellant, he then requested the officers to ask his wife if he didn't see her and Gifford in the bathroom one night kissing, which was asked, but she made no answer. Appellant was asked if he wanted to make an oral statement, and he said, "I sat on the bed in Mr. Gifford's room and Mr. Gifford was stabbing himself with a knife, and I tried to stop him, and then I went downstairs and told my wife I killed Gif, because she thought a lot of Gif."

Only errors considered in appellant's original brief in the "Argument" section will be considered, since failure to follow our rule on this waives any alleged errors. Rule 2-17 (e), (f). Appellant objected to permitting the police officer, Dennis Maxey, to testify as to a conversation downstairs at the

house where in the presence of the appellant, his wife stated he came downstairs and told her he just killed Gif, on the ground the *corpus delicti* had not been proved. The police officer had previously described the position and condition of the decedent in the upstairs bedroom, and from this evidence the court and jury had the right to draw the reasonable inference that someone had feloneously killed him. "Proof of the *corpus delicti* means proof that the specific crime charged has actually been committed by someone. *Parker* v. *State* (1950), 228 Ind. 1, 6, 88 N. E. 2d 556, 89 N. E. 2d 442, *supra.*" *Dennis* v. *State* (1952), 230 Ind. 210, 216, 102 N. E. 2d 650.

Moreover, "the order of proof is, as in other cases, within the sound discretion of the trial court (Anno., 127 A. L. R. 1141) . . ." *Parker* v. *State* (1949), 228 Ind. 1, 12, 88 N. E. 2d 556, 89 N. E. 2d 442.[1] There was no error in admitting this evidence.

Appellant further contends it was error for the trial court to permit the introduction in evidence of a statement made by appellant's wife in the form of written questions and answers signed by her, on the ground that the communications were confidential between the husband and wife. Prior to

1. " . . . but inasmuch as an extra-judicial confession may not be considered and a conviction will not be upheld without independent, corroborative evidence of the *corpus delicti*, the better practice is to adhere to the logical sequence of proof and to delay the confession, unless convincing representations be made that the independent, corroborating evidence will be forthcoming and unless substantial reason for departing from the natural order of proof be made to appear. In such event, the trial court has the right to control the order of proof, subject only to review for harmful abuse of discretion." *Parker* v. *State* (1949), 228 Ind. 1, 12, 13, 88 N. E. (2d) 556, 89 N. E. 2d 442.

the taking of the statement several times when appellant was asked about the killing he said, "Ask my wife." "Where a party directs another to a third person for information or directions, he is bound by the statements of such third person." *Over* v. *Schiffling* (1885), 102 Ind. 191, 193, 26 N. E. 91. The construction this court has placed on §2-1714 (6th clause); Burns' 1946 Replacement, has been to limit the exclusion of such testimony to confidential communications. *Smith* v. *State* (1926), 198 Ind. 156, 152 N. E. 803; *Reynolds* v. *State* (1897), 147 Ind. 3, 8, 46 N. E. 31. Since §2-1714 (6th clause), does not create any absolute incompetency but only a privilege, it necessarily follows that the privilege may be waived. 8 Wigmore, Evidence (3rd Ed.) §2242. The appellant waived the privilege when he told the police officers several times to ask his wife.

Appellant has waived any error in the ruling of the trial court sustaining an objection to questions asked the witness Lucas. Neither the questions, the objections or an offer to prove was set forth in the motion for new trial. "The exhibit offered, or the question asked must be set forth in full or in substance, along with the objection, the offer to prove, if any, the answer, if any, and the court's ruling. It should also be shown who the witness was, whose witness he was, who asked the question or offered the exhibit. [Citing cases.]" Flanagan, Wiltrout and Hamilton, Indiana Trial and Appellate Practice §1812, Comment 8 a, p. 388. See also *Ray* v. *State* (1954), 233 Ind. 495, 120 N. E. 2d 176, 121 N. E. 2d 732; *Buchta* v. *State* (1955), 234 Ind. 295, 126 N. E. 2d 151; *Boyle* v. *State* (1955), 234 Ind. 215, 125 N. E. 2d 707.

There is no merit in appellant's contention that the verdict was not sustained by sufficient evidence and was therefore contrary to law. There is no need to restate

the evidence most favorable to the State in discussion of this contention, since that has already been set forth. Appellant's contention that the decedent stabbed himself to death was disbelieved by the jury, and from this record such contention seems highly improbable, if not impossible, and the jury had the right to believe appellant told the truth when he told his wife he had killed Gif. The case was fairly tried and it appears appellant was afforded every constitutional right.

Judgment affirmed.

Bobbitt, C. J., Landis, Achor and Arterburn, JJ., concur.

NOTE.—Reported in 133 N. E. 2d 48.