TAYLOR *v.* STATE OF INDIANA.

[No. 29,366. Filed February 4, 1957. Rehearing denied March 8, 1957.]

*Howard R. Hooper,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, *Owen S. Boling* and *Harriette Bailey Conn,* Deputy Attorneys General, for appellee.

BOBBITT, J.—Appellant was charged by affidavit under Acts 1941, ch. 148, §6, p. 447, being §10-4101, Burns' 1956 Repl., with inflicting physical injury with "a deadly and dangerous weapon or instrument," while attempting to commit a robbery, tried by jury, found guilty, and sentenced to life imprisonment.

Three erors are assigned here on appeal.

1. That the Court erred in overruling appellant's Motion to Quash the amended affidavit.

2. That Court erred in overruling appellant's Motion to Arrest the judgment.

3. That Court erred in overruling appellant's Motion For a New Trial.

We shall consider these in the order named.

*First:* The motion to quash averred that (1) the facts stated in the amended affidavit do not constitute a public offense; and (2) the offense charged is not stated with sufficient certainty.

Section 10-4101, *supra,* provides, in part, as follows:

"Whoever inflicts any wound *or other physical injury* upon any person with any firearm, dirk, stiletto, bludgeon, billy, club, blackjack, *or any other deadly or dangerous weapon or instrument* while engaged in the commission of a robbery, or while attempting to commit a robbery, shall, upon conviction, be imprisoned in the state prison for life." (Our italics).

That part of the amended affidavit questioned by appellant is as follows:

". . . the said JOE ROBERT TAYLOR, while engaged in committing the attempted robbery as aforesaid, did then and there unlawfully and feloniously inflict a physical injury, to-wit: a wound in and upon the head of the said Ruth Lee with a deadly and dangerous weapon or instrument, the exact nature of which is to the affiant unknown,

then and there held in the hand of the said JOE ROBERT TAYLOR, . . ."

Appellant contends that (1) the averment of a "deadly and dangerous weapon or instrument, the exact nature of which is to the affiant unknown," does not apprise the appellant of the character of the charge against him; (2) that this averment relates to a material element of the alleged offense; and (3) that the amended affidavit wholly fails to aver that appellant used any of the weapons described in the statute.

We concur in appellant's statement that it is the well established rule in this state that the particular crime with which the defendant is charged must be shown with such reasonable certainty, by express averments as will enable the court and jury to distinctly understand what is to be tried and determined, and to fully inform the defendant of the particular charge which he is required to meet. The averments must be so clear and distinct that there may be no difficulty in determining what evidence is admissible thereunder. *Funk* v. *State* (1898), 149 Ind. 338, 340, 49 N. E. 266; *McCloskey* v. *State* (1944), 222 Ind. 514, 518, 53 N. E. 2d 1012; *Madison* v. *State* (1955), 234 Ind. 517, 130 N. E. 2d 35.

However, it is likewise the well settled rule that an offense need not be charged in the exact language of the statute, but words which import the same meaning will be sufficient. *Madison* v. *State, supra; Kistler* v. *State* (1921), 190 Ind. 149, 152, 129 N. E. 625.

The averment here which appellant asserts is insufficient, states that the alleged physical injury was inflicted with "a deadly or dangerous weapon or instrument, the exact nature of which is to the affiant unknown." The words "deadly or dangerous weapon or instrument" are the exact words used in the statute; and this court has recently held that,

"if the character of the instrument used in the assault . . . is unknown, it may be accordingly alleged that it is unknown in the charge or indictment." *State* v. *Carrier* (1956), 235 Ind. 456, 134 N. E. 2d 688, 690. See also: *Waggoner* v. *State* (1900), 155 Ind. 341, 58 N. E. 190, 80 Am. St. Rep. 237.

For the reasons above stated the trial court did not err in overruling the Motion to Quash, and for the same reason there was no error in overruling the motion in arrest of judgment.

*Second:* Appellant asserts that the verdict of the jury is contrary to law because he was of unsound mind at the time the crime was committed. He further asserts that the jury "arbitrarily rejected, . . . evidence of insanity." The evidence on appellant's insanity is in conflict. An examination of the evidence most favorable to the State on this point discloses the following:

The crime charged occurred about 3:30 A.M. on April 16, 1950. Appellant was at the time employed at a filling station where he did "very good work." Appellant was arrested on April 19, 1950 and at that time the arresting officers testified that he seemed "rational" as was the case on subsequent occasions when they talked with him.

Appellant was examined by physicians on July 2, 4, 5 and 6, 1950. One of the doctors testified that appellant was afflicted with the type of cerebral dysrhythmia called epileptic equivalent, the chief characteristic of which is disturbance in behavior; that there is no set pattern of behavior of a person having seizures, but the manifestations are abnormal behavior; that such manifestations are not present at all times and when the epileptic equivalent is in remission, the person would know right from wrong, the nature of his acts and their consequences. This doctor was unable to express an opinion as to whether or not appellant was

suffering from such epileptic seizure on April 16, 1950. The evidence further shows that appellant's history disclosed that he had, since 1948, been subject to what one of the doctors classified as "real" epileptic seizures with physical involvement as distinguished from mental epileptic equivalent which he felt appellant had in 1950.

There is no evidence as to appellant's behavior at the time of the commission of the crime. However, it appears to us that while appellant may at times have suffered from mental derangement, the jury could reasonably have found from the evidence above summarized that appellant was criminally responsible at the time the offense was committed.

> "Where there is mental capacity sufficient to fully comprehend the nature and consequences of an act, and unimpaired will power strong enough to master an impulse to commit a crime, there is criminal responsibility." *Goodwin* v. *State* (1884), 96 Ind. 550, 560.

It seems to us that the facts and circumstances in this case bring it clearly within the rule as quoted, with approval, in *Limp* v. *State* (1950), 228 Ind. 361, 366, 92 N. E. 2d 549, as follows:

> " 'The State introduced no evidence in rebuttal on the question of appellant's sanity, and for this reason appellant insists that the verdict was contrary to law. The substance of the argument is that as appellant offered evidence tending to prove appellant's unsoundness of mind, the jury was bound to acquit, in the absence of direct proof to the contrary. Unquestionably the sanity of the defendant must appear beyond a reasonable doubt, and, when the presumption of sanity that attends every one has been overthrown or impaired, the State must reestablish it by competent proof, or the defendant should be acquitted. But it is the province of the jury, under proper instructions, to determine when the condition of sanity has been made doubtful, and when the doubt has been removed.

" 'All testimony is not proof. That only is proof which convinces. . . . So . . . the jury, being the sole judges of the weight of the evidence, found the evidence offered by appellant unworthy of belief, they had a right to disregard it.' " See also: *Wright* v. *Peabody Coal Co.* (1948), 225 Ind. 679, 687, 77 N. E. 2d 116.

We believe there is sufficient evidence in the record from which the jury could reasonably have concluded that appellant was criminally responsible at the time the alleged offense was committed.

*Third:* It is further asserted that the evidence is insufficient to establish the *corpus delicti.* Proof of the *corpus delicti* means proof that the specific crime charged has actually been committed by someone. *Hunt* v. *State* (1956), 235 Ind. 276, 133 N. E. 2d 48, 49, 50; *Dennis* v. *State* (1952), 230 Ind. 210, 216, 102 N. E. 2d 650, 653.

Ruth Lee Mueller, a witness for the State, testified on direct examination, that on April 16, 1950, while asleep on the davenport in the living room of her apartment at 701 East 21st Street, Indianapolis, Indiana, she was awakened about 3:30 in the morning by someone striking her over the head and saying at the same time, "Don't scream. I will kill you."; that the assailant struck her again and demanded money, and when she replied that she had none, he grabbed her around the shoulders and neck and dragged her into the kitchen where he again demanded money; that he again caught her around the neck, whereupon she "jumped" and ran into the bedroom where her father was asleep; and that upon examining the back door to the apartment she found the night chain broken and the door unlocked. This is sufficient evidence to establish the *corpus delicti*—that someone inflicted a "wound or physical injury" upon Ruth Lee [Mueller] while attempting to commit a robbery.

However, in order to sustain the conviction herein it was also necessary for the State to prove beyond a reasonable doubt that appellant was the person who committed the crime. To determine this we will examine the evidence most favorable to the State on this point.

Esther Haggard Bicknell, a witness for the State, testified that she lived with her sister Ruth Lee [Mueller] at 701 East 21st Street, Indianapolis, Indiana, and that she was in the apartment on April 16, 1950, arriving there about two o'clock in the morning; and that her sister was asleep on the davenport in the living room of the apartment.

This witness further testified that approximately fifteen minutes after she arrived home the doorbell of the apartment rang and she went to see who was at the front door; there she found a man who said he wanted to know if Ruth Lee lived there, and she replied that she did. The man further said that he had come to pick up Ruth Lee's Buick automobile. Upon telling the man that her sister did not have a car, he said he must have made a mistake and turned and walked out in the front yard where he stood and looked for a few minutes at the apartment building. The man was wearing blue coveralls. As he left he turned west on 21st Street. This witness identified the appellant herein as being the person who was at the apartment door at approximately 2:15 in the morning of April 16, 1950.

This witness further testified that she identified appellant on Saturday following the Sunday night on which her sister was attacked, and that she "picked" him out of the lineup of about ten prisoners.

Charles Dashiell, a police officer of the City of Indianapolis and a witness for the State, testified that he saw appellant herein on or about April 19, 1950, in the alley behind 1410 College Avenue, about 12:30 A.M. Appellant fitted the description of a man who had been

molesting women in the neighborhood and he placed him under arrest for city vagrancy; that he again saw appellant subsequent to April 26, 1950 in the Homicide Bureau at Police Headquarters in the company of Sergeant Kleifgen and Detective Sergeant Gaither and himself; that appellant said at that time that he would like to see his wife and talk with her, and that he wanted to make a statement; that appellant told the three policemen about being in Ruth Lee's apartment on 21st Street in midmorning on the 16th day of April, 1950. Appellant further said that he had been drinking that night and had gone to his brother's house where he was sleeping when he "felt something pulling him" over which he had no control, and later found himself in Ruth Lee's apartment; that he had grabbed her and hit her and asked for money, and when she ran from him he left the apartment.

This testimony was supported by Detective Sergeant Gaither, also a witness for the State.

This evidence was sufficient to sustain the verdict of the jury that the appellant was the person who committed the crime charged herein.

Appellant has failed to show reversible error and the judgment of the trial court must be affirmed.

Judgment affirmed.

Achor, C. J., Arterburn, Emmert and Landis, JJ., concur.

NOTE.—Reported in 140 N. E. 2d 104.