## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 24 2017, 6:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott H. Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tony Arguello,

*Appellant-Defendant,*

*v.*

State of Indiana,

*Appellee-Plaintiff.*

August 24, 2017

Court of Appeals Case No.
71A03-1703-CR-654

Appeal from the St. Joseph Superior Court

The Hon. Jeffrey L. Sanford, Judge

Trial Court Cause No.
71D03-1605-F1-11

**Bradford, Judge.**

# Case Summary

[1] In November of 2014, Ashley Wharton, her husband, and her three children, including four-year-old B.W. and six-year-old A.W., moved into the home of Clarice Wharton, her mother-in-law. Clarice was living there with Appellant-Defendant Tony Arguello. Between November of 2014 and May of 2016, Arguello inserted his penis into A.W.'s vagina, performed oral sex on her, and digitally penetrated her vagina and anus. Also during that period, Arguello submitted to oral sex by B.W. and performed oral sex on him. In an interview with a police detective, Arguello confessed to committing the above acts with A.W.

[2] The State charged Arguello with seven counts of Level 1 felony child molesting, and, following a jury trial, he was convicted of six counts and received an aggregate sentence of 160 years of incarceration. Arguello contends that fundamental error occurred when (1) a sexual assault nurse examiner testified that A.W. told her that someone had anally penetrated her with his penis and (2) the State failed to satisfy the *corpus delicti* requirement for three of the charges against him. Because we disagree, we affirm.

# Facts and Procedural History

[3] Ashley, her husband, and her three children, A.W., B.W., and a younger son moved into Clarice's home at 1729 Robinson Street, South Bend, in November of 2014. Clarice and her boyfriend Arguello lived in the home when Ashley's

family moved in. B.W. was four years old and A.W. was six years old when they moved in. Clarice's house has two bedrooms upstairs and one in the basement. Clarice slept on a pull-out bed on the main floor, Ashley and her husband had a bedroom in the basement, and B.W. and A.W. were in a bedroom across from Arguello's bedroom upstairs.

[4] Arguello lived in Clarice's house the entire time Ashley and her family lived there, with the exception of a few months when he had his own place in May through August of 2015. The house Arguello lived in during that period was only a short walk from Clarice's. Arguello babysat for A.W. and B.W. often, and they regarded him as a grandfather. The children missed Arguello very much when he was living in his own place, and they visited him at his place and stayed overnight.

[5] Arguello started touching A.W. sexually when she was five years old, having A.W. remove her clothes in the basement. Arguello touched A.W. with his hands and with his penis (which A.W. called his "popcorn") on her vagina (which A.W. called her "popsicle"). Tr. Vol. III p. 28. Arguello did this to A.W. in both the upstairs bedroom and in the basement. A.W. said that white, "watery stuff" would come out of Arguello's "popcorn" onto her stomach when he did this. Tr. Vol. III p. 29. Arguello ejaculated into A.W.'s mouth, and A.W. described that it tasted like "socks in a sewer[.]" Tr. Vol. III p. 33. Arguello licked A.W.'s vagina and put candy on it, then would remove the candy with his mouth. Arguello did these things to A.W. upstairs and in the basement. A.W. explained that it was easier to clean up Arguello's ejaculate in

the basement. Arguello also asked A.W. to "pee" on him. Tr. Vol. III at 40. A.W. did this to Arguello and Arguello also urinated on A.W. Arguello referred to this as "golden showers[.]" Tr. Vol. III p. 41. Arguello also inserted a straw into A.W.'s vagina and her "butt" and rubbed them with it. Tr. Vol. III p. 47. Arguello asked A.W. to be his girlfriend.

[6] Arguello also touched B.W. sexually when he was alone with him. Arguello would touch his penis to B.W.'s penis, which B.W. referred to as a "pee pee[,]" and rub them together. Tr. Vol. III p. 63. When Arguello did this, B.W. said "[h]oney would come out[.]" Tr. Vol. III p. 64. B.W. explained that he and Arguello would wipe the "honey" up with a towel. Arguello did this to B.W. at his house. Arguello would also touch B.W.'s "butt" with his penis and "rub it[,]" which hurt, according to B.W. Tr. Vol. III pp. 70–71. Arguello also put B.W.'s "pee pee" in his mouth. Tr. Vol. III p. 71.

[7] In May of 2016, Ashley had a conversation with the children about inappropriate touching. After this conversation, Ashley called the South Bend Police Department, and officers came to Clarice's house. Ashley and the children were referred to the CASIE Center, where A.W. and B.W. were interviewed. Afterward, A.W. and B.W. were taken to the emergency room of St. Joseph Memorial Hospital, where sexual assault nurse examiner Abbie Baker examined both children for injury from sexual assault. Nurse Baker's examination of A.W. revealed redness to her labia majora and a pronounced and abnormal dilation of the sphincter muscles of A.W.'s anus.

[8] On May 19, 2016, South Bend Police Detective Maranda Baker interviewed Arguello. Arguello told Detective Baker that he had penetrated A.W.'s vagina with his middle and index fingers, and that he had vaginally penetrated her on three occasions. Arguello also said that he had penetrated A.W.'s anus with one finger, and that this had occurred on three occasions as well. Arguello stated that A.W. had sat on his face, and that this had happened "no more than" four times. State's Ex. 26 at 17:52:27, 18:18:39. Arguello explained to Detective Baker that when A.W. did this, he was performing oral sex on her. Arguello also admitted to placing candy on A.W.'s genitals and removing the candy with his mouth. Finally, Arguello said to Detective Baker that A.W. would "grind" on him while holding his erect penis and trying to sit on it. State's Ex. 26 at 17:47:32, 17:48:26. Arguello said that A.W. had put his penis between her vaginal "lips" on eight different occasions. State's Ex. 26 at 18:17:00. Arguello said that when A.W. would do this, the tip of his penis would slip inside of her.

[9] On May 25, 2016, the State charged Arguello with seven counts of Level 1 felony child molesting, five related to A.W. and two related to B.W. The State charged Arguello with the following acts with A.W.: Count I, sexual intercourse; Count II, performing oral sex on her; Count III, digitally penetrating her vagina; Count IV, digitally penetrating her anus; and Count V, submitting to oral sex performed by her. A jury trial took place January 23 through 25, 2017. The State offered the testimony of Nurse Baker regarding her examination of A.W. and B.W. at the St. Joseph Hospital emergency room.

After Nurse Baker testified about her credentials, experience and practice in conducting sexual assault examinations, Arguello objected to her providing any testimony regarding what A.W. told her during the examination about how she sustained any injuries. The trial court prohibited Nurse Baker from testifying to A.W.'s identification of the person who touched her. However, the trial court overruled Arguello's objection to Nurse Baker's testimony regarding A.W.'s statements about what happened to her, explaining that, "What happened to her I think is admissible for purposes of treatment. But who did it is not." Tr. Vol. III p. 112. Nurse Baker testified that A.W. told her that a penis had been inserted in her anus.

[10] Arguello's video recorded interview with Detective Baker was admitted at trial after redaction and without objection. After the evidence had been presented, Arguello moved for a directed verdict on Count V (which alleged that Arguello had submitted to oral sex performed by A.W.), and the State agreed that it had not presented evidence to support that charge and moved to dismiss. The jury returned verdicts of guilty on all remaining counts. On February 24, 2017, the trial court sentenced Arguello to an aggregate sentence of 160 years of incarceration.

# Discussion and Decision

## I. Nurse Baker's Testimony

[11] Arguello contends that the trial court abused its discretion in allowing Nurse Baker to testify regarding what A.W. told her had happened to her. As

mentioned, Nurse Baker testified that A.W. told her that she had been anally penetrated by a penis. As Arguello points out, however, he was not charged with anally penetrating A.W. with his penis. We assume, without deciding, that this evidence was not relevant and that a timely objection to it on that basis would properly have been sustained.

[12] Arguello claims, however, that its admission amounts to fundamental error.

> Appellate courts may, on rare occasions, resort to the fundamental error exception to address on direct appeal an otherwise procedurally defaulted claim. But fundamental error is extremely narrow and available only when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible.

*Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008).

[13] Considering the overwhelming evidence of Arguello's guilt, namely A.W.'s trial testimony and his own confession, we conclude that he has failed to establish fundamental error in this regard. A.W. testified that Arguello touched her with his hands and with his penis on her vagina, supporting a reasonable inference of sexual intercourse. Tr. Vol. III p. 28. A.W. said that white, "watery stuff" would come out of Arguello's penis onto her stomach when he did this. Tr. Vol. III p. 29. A.W. testified that Arguello licked her vagina and put candy on it, then would remove the candy with his mouth. Even more damning was Arguello's own confession. Arguello told Detective Baker that he had penetrated A.W.'s vagina with his middle and index fingers on three occasions,

penetrated A.W.'s anus with one finger on three occasions, performed oral sex on A.W., and vaginally penetrated A.W. with the tip of his penis. Given the overwhelming evidence of Arguello's guilt, it can hardly be said that the admission of Nurse Baker's testimony was so harmful that the harm or potential for harm cannot be denied and was so prejudicial to Arguello's rights as to make a fair trial impossible. Arguello has failed to establish fundamental error.

## II. *Corpus Delicti*

[14] Arguello contends that the State failed to establish *corpus delicti* for three of the four crimes he was convicted of committing against A.W. Arguello did not raise this argument below but now claims that fundamental error occurred. As mentioned, fundamental error occurs "when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible." *Jewell*, 887 N.E.2d at 942.

[15] "Proof of the *corpus delicti* means proof that the specific crime charged has actually been committed by someone." *Taylor v. State*, 236 Ind. 415, 421, 140 N.E.2d 104, 108 (1957).

> For a confession to be admitted into evidence, the State must establish the corpus delicti. *Rickey v. State*, 661 N.E.2d 18, 23 (Ind. Ct. App. 1996), *trans. denied*. The purpose for requiring proof of the corpus delicti is to prevent the admission of a defendant's confession to a crime that never occurred. *Hurt v. State*, 570 N.E.2d 16, 19 (Ind. 1991). The State is not required to

prove the corpus delicti beyond a reasonable doubt, but must present independent evidence from which an inference may be drawn that a crime was committed. *Douglas v. State*, 481 N.E.2d 107, 110 (Ind. 1985). The corpus delicti need not be established prior to admission of the confession so long as the totality of independent evidence presented at trial establishes it. *Morgan v. State*, 544 N.E.2d 143, 146 (Ind. 1989). The corpus delicti may be established by circumstantial evidence. *Grey v. State*, 273 Ind. 439, 442, 404 N.E.2d 1348, 1350 (1980).

*Weida v. State*, 693 N.E.2d 598, 600 (Ind. Ct. App. 1998), *trans. denied*.

[16] We conclude that Arguello has not established any error in this regard, much less fundamental error. Arguello's argument is that three of his four convictions arising out of his molestation of A.W. were insufficiently supported by independent evidence. Arguello notes that A.W. did not expressly testified that Arguello's fingers and penis penetrated her vagina and anus, only that he "rubbed" her anus and genitalia with his fingers and penis.

[17] Arguello's argument seems premised on the notion that each element of each charge must be independently corroborated in order the satisfy the *corpus delicti* requirement. Put another way, Arguello would seemingly require the State to prove each charge twice in cases involving a confession. The law does not require such comprehensive corroboration:

> We are persuaded that where a defendant confesses to several crimes of varying severity within a single criminal episode, strict and separate application of the corpus delicti rule to each offense adds little to the ultimate reliability of the confession once independent evidence of the principal crimes is introduced. The confession at that point has been substantially corroborated. In

such a case the confession stands as direct evidence of each crime, even those not separately corroborated, if the independent evidence establishes the corpus delicti of the principal crime or crimes.

*Willoughby v. State*, 552 N.E.2d 462, 467 (Ind. 1990).

[18] At issue here are the charges that Arguello had sexual intercourse with A.W. and digitally penetrated her anus and vagina. Nurse Baker testified that her examination of A.W. revealed redness to her labia majora and a pronounced and abnormal dilation of the sphincter muscles of her anus. Nurse Baker also testified that digital penetration could cause redness to the labia and anal dilation. Moreover, based on the above, we conclude that one could reasonably infer that redness to the labia could have been caused by penile penetration as well. Nurse Baker's testimony is sufficient to raise an inference that the crimes charged were committed by someone, which is all that is required. Arguello has failed to establish error in this regard, much less fundamental error.

[19] We affirm the judgment of the trial court.

May, J., and Barnes, J., concur.