**Joyce Ann HAWKINS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 27A04–0706–CR–318.

Court of Appeals of Indiana.

April 29, 2008.

Transfer Denied July 10, 2008.

3. We hereby deny Appellants' Verified Motion to Strike, filed with this court on February 27, 2008.

Patricia Caress McMath, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Joyce Hawkins ("Joyce") was convicted in Grant Superior Court of murder, and sentenced to sixty years. Joyce raises five issues on appeal that we restate as follows:

I. Whether the trial court erred in allowing testimony regarding an attempt to conceal the shooting of Tim Hawkins ("Tim").

II. Whether the State presented sufficient independent evidence that a murder was committed to permit admission of Joyce's confession into evidence.

III. Whether letters written by Joyce were seized in violation of her constitutional right to privacy.

IV. Whether the trial court erred in refusing to allow Joyce to admit into evidence phone calls when it had allowed the State to admit other phone calls.

V. Whether the evidence is sufficient to establish that Joyce murdered Tim.

We affirm.

### Facts and Procedural History

Joyce and Tim had been married, and after getting a divorce, Tim still lived with Joyce at her home in Gas City. Theirs was a tempestuous relationship that involved a number of calls to the police, specifically, in reference to this case, on February 15, 20, and 21, 2004. During the months preceding Tim's disappearance in March, Joyce told Tim's mother and a friend that she was going to kill him. At all relevant times, Joyce owned a nine-millimeter handgun.

Beginning in April 2003, Tim and Joyce began work as truck drivers with a trucking company. They were both aware of the presence of a GPS tracking system in the truck. Initially they worked full time but then cut back to part time because of personal issues. In February 2004, Tim picked up a truck from the company's headquarters.

Joyce and Tim planned to build a house on property they referred to as "the farm." On March 6, 2004, Tim submitted a change of address to the post office, moving from Joyce's house to his mother's house. An address change was also filed on March 13, 2004, switching the mail from Joyce's house to Tim's sister's address.

On March 7, 2004, Joyce drank at a bar to the point of intoxication. Her father took her home, and during this trip she apparently fell down, becoming "scraped up" as a result. On March 8, 2004, Joyce did not remember the fall and believed that Tim had beaten her up. Joyce looked for Tim and found him at a friend's house. Tim ignored her.

According to the GPS tracking system, on March 8, 2004, Tim's truck was located in Kokomo at 1:50 p.m. where it remained until 2:10 a.m. the next day. On March 8, 2004, Joyce walked to her aunt's home in Kokomo sometime before 2:33 p.m. and requested a ride to "the farm." On March 9, 2004, the trucking company received a message from Tim's truck stating, "Mike I[sic] sorry but I quit your truck is Indiana at I69 at Exit 19 by Subway Tim."

On March 10, 2004, a sheriff's deputy responded to a report of an abandoned vehicle in Pendleton, which he discovered was Tim's truck. Upon inspection, the sheriff's deputy noted a broken window, unlocked door, clean interior, and lack of

blood. Shortly thereafter, a trucking company employee transported the truck to a company facility in Columbus, Ohio. The company began to repair the truck and prepare it for sale. They replaced the driver's side window, replaced the driver's side seat, began to repair pry marks around the door, and cleaned up the broken glass inside the truck. Additionally, they found a nine-millimeter bullet casing inside the dashboard. At no point did they find any blood, but they did note the torn seat and mattress and the presence of diesel fuel inside the cab.

After the truck had been recovered, a crime scene technician, Sergeant John Kelly ("Sergeant Kelly"), of the Indiana State Police went to Ohio to process the truck. At that time, the trucking company had already begun to repair the truck but had taken photos of the truck when it was recovered. Initially, Sergeant Kelly noted white marks indicating something being dragged across the floor of the cab and the presence of diesel fuel. Upon further investigation, Sergeant Kelly found that a mattress had two portions cut out of it. Also, Sergeant Kelly noted stains on the curtain behind the driver's seat. He collected the curtain and the stain for analysis. He also noted several small stains around the base of the driver's seat. Of five stains analyzed, only three came back as bloodstains, possibly from Tim. Two bloodstains were found around the base of the driver's seat and one on the curtain behind the driver's seat.

On March 29, 2004, Tim's family filed a missing person report after being notified by the trucking company that he had quit and abandoned the truck. After a press release asking for information on Tim, the police received four reports from persons who believed that they had seen a person who looked like Tim since he had been reported missing. The police did not follow up on these reports.

On August 3, 2004, Joyce was arrested on an unrelated intimidation charge. In early September of 2004, while in prison, Joyce wrote to a police officer and offered to provide information regarding narcotics in exchange for her release. During the conversation, the officer asked about Tim, but Joyce refused to speak of it.

On September 9, 2004, Joyce confessed her involvement in Tim's death. Specifically, Joyce claimed that she accidentally shot Tim inside the truck at the farm. She then attempted to conceal the incident. Joyce claimed that she left Tim in the cab and returned home. She claimed that she returned later after buying five bottles of hydrogen peroxide from the Dollar General store. She said that she pulled Tim's body from the cab and put his body in a wheelbarrow to move it to the back of the property. However, when the body fell out of the wheelbarrow, she decided to burn the body where it fell near a building on the property. She claimed that she burned the body over the course of three or four days. Joyce also claimed that she threw the gun used in the shooting into the river. She then claimed to have taken the truck to Exit 19 to finish cleaning out the cab.

Joyce took three police officers to the river and showed where she had thrown the gun. Then they went to the farm where she showed them where Tim's body had been burned. Thereafter, the investigators followed up on the details of Joyce's confession. Using the GPS equipment in the truck, they determined that the truck could not have been at the farm when she said she was there. Also, Dollar General's sales records did not show any purchase of hydrogen peroxide for the time period claimed. The gun was never recovered despite two searches of the river. No

evidence of a burned body was ever found at the farm.

After Joyce gave her confession to police on September 9, 2005, she wrote six letters while incarcerated, all of which were intercepted by the jail and forwarded to the prosecutor. The letters were written on September 10 or 11 and September 15, 2005. Three of the letters were written to "Dear Abby," Rev. Billy Graham, and a former minister, Marvin Wiseman, respectively. One letter was addressed to the officer investigating her case. The other two were addressed to her family. On September 15, 2005, the prosecutor obtained a search warrant to open the letters and did so.

Joyce wrote letters to "Dear Abby," Rev. Billy Graham, and Marvin Wiseman on September 11, 2004. In Joyce's letter to "Dear Abby," in September she requested help. She noted that "I know what I did, I will never get out." State's Ex. 70.4. Also she wrote, "I know I did not think of the boy's [sic] then, but, someone else had control of my min[d]." *Id.* In Joyce's letter to Billy Graham, she related how she was scared, didn't know what to do, and wanted help. Her letter to Marvin Wiseman requested that he help her and her family.

In a letter to her family written on September 12, 2004, she recounted the events of the night before the disappearance of Tim and how she met Tim that morning. She also wrote that she wanted to write more but couldn't, "[I]f you know what I mean." State's Ex. 70.6. In a card to her family written on September 10, 2004, she wrote a letter to her sons which stated, "[w]ith my luck, I know the court's [sic] won't find it a self-de[f]ence. Because of what I did after word's [sic]." State's Ex. 70.2. She also wrote "sorry" on the envelope. Finally, in a letter to a friend written on September 10, 2004, she wrote

that she didn't know how much she could write because "I know for sure they will read everything I write." State's Ex. 70.1. She also wrote about feeling like Tim is there helping her and that she was sexually abused as a child. She wrote that when she talked to somebody about something that had been bothering her for six months and got help for herself and Tim, she was put in jail. Also, she admitted that she could not remember the answers to questions that the police were asking her.

On March 17, 2005, the State charged Joyce with murder. A jury trial began on January 22, 2007. On February 5, 2007, the jury found Joyce guilty as charged. On March 12, 2007, the trial court sentenced Joyce to sixty years. Joyce appeals.

## I. Testimony of Sergeant Kelly

▮▮▮ Joyce claims that the trial court abused its discretion by admitting the opinion testimony of Sergeant Kelly into evidence. The admission and exclusion of evidence lies within the sound discretion of the trial court; therefore we review admission of testimony for abuse of that discretion. *State v. Lloyd*, 800 N.E.2d 196, 198 (Ind.Ct.App.2003). Such an abuse occurs when the "decision is clearly against the logic and effect of the facts and circumstances." *Id.*

▮▮▮ Under Indiana Rule of Evidence 701, "[i]f the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of the witness's testimony or the determination of a fact in issue." A skilled witness is an individual whose knowledge is insufficient to be termed an expert yet is beyond that of an ordinary juror. *Prewitt v. State*, 819 N.E.2d 393, 413 (Ind.Ct.App.

2004), *trans. denied.* The trial court, within its discretion, determines whether a witness is qualified to give an opinion. *Kent v. State,* 675 N.E.2d 332, 338 (Ind.1996). "Skilled witnesses not only can testify about their observations, they can also testify to opinions or inferences that are based solely on facts within their own personal knowledge." *Cansler v. Mills,* 765 N.E.2d 698, 703 (Ind.Ct.App.2002), *trans. denied.*

■ The State never contended that Sergeant Kelly was an expert. Therefore his opinion must be examined under Ind. Rule of Evidence 701 and his opinion must have been rationally based on his perception of the facts and that perception must have been one that could be normally formed by a reasonable person. "Requirement that opinion testimony of skilled witness or lay person be 'rationally based' on perception means simply that opinion must be one that reasonable person normally could form from perceived facts." *Mariscal v. State,* 687 N.E.2d 378, 380 (Ind.Ct. App.1997), *trans. denied.*

At trial, Sergeant Kelly testified that, in his opinion, someone had attempted to conceal the shooting of Tim. Sergeant Kelly based his opinion on his experience as a crime scene technician, the presence of three drops of blood that were purportedly Tim's, a nine-millimeter bullet casing found in the dashboard, and the absence of blood where he had anticipated finding it. Tr. pp. 1224–28.

Sergeant Kelly testified that, in his opinion, a person had been shot in the head while sitting in the driver's seat of the semi-truck. After the shooting, the body was moved to the mattress in the back of the semi-truck where it was left for an unknown amount of time. At some point, the body was then dragged on the floor of the semi and pulled out through the semi driver's side door. He surmised that whoever shot the person then attempted to conceal the shooting by removing the curtain behind the driver's seat, removing part of the driver's seat cushion, removing part of the mattress where a head could have laid, and cut out part of the carpet. After that, the individual attempted to use diesel fuel to clean the floor. Also, Sergeant Kelly explained that if a gun had been fired from the passenger side, then the bullet casing would have been ejected and landed in the dashboard.

The question is whether Sergeant Kelly's opinion was one that a reasonable person could form from the facts (or lack thereof) presented at trial. Sergeant Kelly acknowledged a problem with his opinion testimony.

Q. Is it fair to say, Sergeant Kelly, that the portions of the mattress that have been removed, uh, the carpeting that's been removed, even the portion from the seat that's been removed, makes it, makes it more difficult for you to come up with a theory or an opinion?

A. Not that it affects my theory, because I, I've had this happen many times before.

Q. You might not have evidence that you could have used to support your theory, is that fair to say?

A. That is true, yes.

Q. So, the foundations for your theory aren't there?

A. The evidence is not there.

Tr. pp. 1311–12.

Sergeant Kelly admitted only that "[t]he evidence is not there." However, he did not state that his theory lacked a foundation. He based his opinion on his experience as a crime scene investigator, the absence of portions of the upholstery in the truck cab, along with the presence of a spent bullet casing and three drops of

blood found in the truck cab. With this background, Sergeant Kelly's opinion that someone attempted to conceal a shooting is reasonable.

The opinion testimony was helpful to the clear understanding of the witness's testimony or the determination of a fact in issue. Without this testimony, the jury would not likely be able to understand the significance of the missing upholstery or understand how the various pieces of physical evidence related to one another and to the larger investigation.

Skilled witness testimony generally needs only rise to a relatively low bar in order to be admissible and the testimony regarding the concealment of Tim's shooting reaches that standard. Sergeant Kelly's opinion testimony was rationally based on his perceptions and assisted the jury in understanding his testimony as is required under Indiana Evidence Rule 701. Therefore, the trial court did not abuse its discretion when it allowed Sergeant Kelly to give his opinion regarding an attempt to conceal the shooting of Tim.

## II. Admission of Joyce's Confession

■ Next, Joyce argues that the trial court erred in admitting her confession into evidence. Specifically, Joyce contends that the State did not provide sufficient independent evidence of the corpus delicti to admit into evidence her confession. According to Joyce, the State's only evidence to support the admission of her confession was the improperly admitted opinion testimony of Sergeant Walker, which stated that Tim was shot in his truck cab and that his body was removed from the truck. Br. of Appellant at 13.

■ The corpus delicti rule states that a confession may not be the sole basis for a crime and that there must be independent evidence of a crime. *Workman v. State,* 716 N.E.2d 445, 447 (Ind.1999).

"Admission of a confession requires some independent evidence of the crime including evidence of the specific kind of injury and evidence that the injury was caused by criminal conduct." *Id.* "This evidence need not prove that a crime was committed beyond a reasonable doubt, but merely 'provide an inference that a crime was committed,' ... 'an inference that may be established by circumstantial evidence.'" *Id.* We look to the totality of the independent evidence throughout the course of the trial to determine if such an inference has been established. *Weida v. State,* 693 N.E.2d 598, 600 (Ind.Ct.App.1998), *trans. denied.* "The independent evidence supporting the corpus delicti need not preclude every possible explanation of the circumstances." *Stevens v. State,* 691 N.E.2d 412, 424–25 (Ind.1997). Circumstantial evidence may be the sole means of establishing the corpus delicti. *Jones v. State,* 701 N.E.2d 863, 866 (Ind.Ct.App.1998). As noted above, the opinion portion of Sergeant Kelly's testimony was properly admitted. As such, his opinion that Tim was shot in the semi-truck cab and that the shooting was then covered up is independent evidence to support the admission of Joyce's confession.

Aside from this opinion evidence, the evidence at trial established that blood was found in the truck cab, Joyce owned a nine-millimeter handgun, a nine-millimeter bullet casing was found in the truck cab, Joyce admitted in a letter to meeting with Tim the morning he disappeared, Joyce threatened, on two separate occasions to Tim's mother and a friend of Tim's to kill Tim, Joyce believed that she would be in jail for a very long time, and Tim has not been positively identified since the last time he was seen alive. This evidence establishes an inference that the offense of murder was committed.

Joyce argues that the State did not provide a body; however, the production of a body is not necessary if circumstantial evidence shows that a death did occur. *See Campbell v. State*, 500 N.E.2d 174, 178 (Ind.1986); *Collins v. State*, 274 Ind. 619, 622, 413 N.E.2d 264, 266 (Ind.1980); *Stocking v. State*, 7 Ind. 326 (Ind.1855); *Jones*, 701 N.E.2d at 867.

While other possible inferences may have been drawn from the evidence, the inference that Tim is dead and that a criminal act was the cause of his death is a reasonable inference. *See Grey v. State*, 273 Ind. 439, 404 N.E.2d 1348, 1351 (1980). The corpus delicti rule was satisfied; the trial court did not abuse its discretion in admitting the confession.

### III. Prison Letters

█ Joyce argues that the trial court abused its discretion by admitting into evidence letters seized by the jail in violation of her constitutional rights under the 4th Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. In essence, Joyce presents two issues. The first is whether Joyce had an expectation of privacy with regard to outgoing letters while incarcerated. The second is whether the State had sufficient probable cause to open the letters seized.

As a prisoner, Joyce enjoyed a substantially diminished expectation of privacy since she knew that her phone calls were recorded, her prison visits monitored, her incoming mail opened by prison staff, and her prison cell searched. Br. of Appellant at 16. Jails and prisons have an interest in maintaining prison security and preventing illegal acts by inmates, whether those acts occur within or without the pris-

on's walls. *United States v. Whalen*, 940 F.2d 1027, 1035 (7th Cir.1991). "[B]ecause of their reasonable concern for prison security and inmates' diminished expectations, prison officials do not violate the constitution when they read inmates' outgoing letters." *United States v. Brown*, 878 F.2d 222, 225 (8th Cir.1989). While the jail did not specifically notify Joyce of the possibility that her letters could be read, she had notice of the possibility that her letters would be read.[1] Therefore, we conclude that Joyce had no privacy interest in her outgoing letters.

In this case, the State obtained a search warrant before opening the letters, and the short period of time the unopened letters were detained before the issuance of the search warrant is insufficient to be considered a violation of Joyce's rights. *See United States v. Van Leeuwen*, 397 U.S. 249, 253, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). "Even if the item is a container, its seizure does not compromise the interest in preserving the privacy of its contents because it may ... be opened pursuant to ... a search warrant." *Horton v. California*, 496 U.S. 128, 141 n. 11, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *see also Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970).

Even if the State did need to obtain a search warrant before examining the contents of the letters, the State demonstrated sufficient probable cause to have obtained a valid search warrant. We focus on whether a "substantial basis" existed for a warrant authorizing the search or seizure, and we resolve doubtful cases in favor of upholding the warrant. *Mitchell v. State*, 745 N.E.2d 775, 783 (Ind.2001). With significant deference to the trial

---

**1.** In a letter to Karen Small written on September 12, 2004, Joyce remarks, "I have so much more to tell you, but won't put it on paper. If you know what I mean." State's Ex. 70.6. Also, in another letter, Joyce wrote, "I know for sure they will read everything I write." State's Ex. 70.1

court's determination, we must "focus on whether reasonable inferences drawn from the totality of the evidence support the determination" that a substantial basis existed. *Id.* Our review of the trial court's "substantial basis" determination is de novo. *Houser v. State,* 678 N.E.2d 95, 98 (Ind.1997).

In a letter dated September 4, 2005, Joyce asked to speak with a police officer. At the subsequent interview with police, Joyce confessed on September 9, 2005 to killing Tim. At the probable cause hearing, David Homer, investigator for the Grant County prosecutor's office, testified that probable cause existed because of a belief that Joyce had an accomplice based on her confession, that despite Joyce's directions, the police had not located Tim's body, and that Joyce was not truthful about the destruction of evidence of the murder. Probable cause for the issuance of the search warrant was provided by the fact that the letters were written in such close proximity in time to her confession to the murder of Tim and the need to corroborate her confession. We conclude that a substantial basis existed to support a finding of probable cause for the issuance of a warrant authorizing the opening of the letters written by Joyce.

In addition, Joyce did not have a justifiable expectation of privacy in her outgoing letters, especially with the jail procedures in place of which she was aware. Also, the State provided sufficient probable cause for the issuance of a search warrant before opening the letters. We therefore conclude that the trial court did not abuse its discretion in admitting the letters into evidence.

### IV. Prison Phone Calls

█ Joyce argues that the trial court erred when it prohibited her from admitting phone calls made while in prison when the State had been permitted to admit other phone calls between the defendant and her father and mother. Joyce believes that pursuant to the doctrine of completeness under Indiana Evidence Rule 106, the trial court should have allowed her to provide other phone calls. However the doctrine of completeness does not apply in this situation.

At trial, the State presented three phone calls that consisted of phone conversations with her father and mother while she was in jail. The phone calls in question were all contained on one CD but the State specifically admitted into evidence only certain conversations on the CD. Joyce sought to introduce another conversation contained on one of the CDs entered into evidence by the State in an effort to give the jury a more complete picture. Joyce did not testify at trial. The State objected because Joyce wanted to introduce entirely different conversations, and as such the doctrine of completeness would not apply. The trial court sustained the objection.

Evidence Rule 106 (2008) provides:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require at that time the introduction of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it.

█ This rule may be used to admit omitted portions of a statement in order to "(1) explain the admitted portion; (2) place the admitted portion in context; (3) avoid misleading the trier of fact; or (4) insure a fair trial and impartial understanding of the admitted portion." *Lieberenz v. State,* 717 N.E.2d 1242, 1248 (Ind.Ct.App.1999), *trans. denied.* The trial court is not required to admit the remainder of the statement, or portions of that statement, if they are neither explanatory of nor relevant to the parts already introduced. *Id.* The doctrine even applies to self-serving hearsay statements. *McElroy v. State,* 553 N.E.2d 835, 839 (Ind.1990).

The State did not exclude portions of the admitted conversation but rather chose not to seek admission of other, separate conversations. Joyce argues that she "was not consistently making statements that could be incriminating." Br. of Appellant at 20. While Joyce recognizes that the statements would be inadmissible hearsay, she argues that Evidence Rule 106 allows her to introduce otherwise inadmissible hearsay to complete the picture presented by the State's evidence. Br. of Appellant at 19.

Evidence Rule 106 is limited by "fairness." This allows the trial court to use its discretion to determine whether evidence should be admitted as a matter of fairness to the parties and proceedings. In this case, the trial court determined that since Joyce would not be testifying, the conversations would be inadmissible hearsay. The trial court determined that unless Joyce testified, admission of the excluded conversations would be unfair since the State could not question Joyce as to their contents. Fairness did not require that the trial court allow admission of otherwise inadmissible hearsay. While the doctrine of completeness does allow for self-serving hearsay, that determination should be and is left to the trial court's discretion.

Based on the facts and circumstances of this case, we conclude that the trial court did not abuse its discretion by denying Joyce's request to admit recordings of other conversations.

### V. Sufficiency of the Evidence

■■■■ When we review a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind.2003). We look only to the probative evidence supporting the verdict and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.* A confession is direct evidence of guilt of the criminal activity admitted if the confession is properly admitted into evidence. *Willoughby v. State*, 552 N.E.2d 462, 467 (Ind.1990).

■■■■ Joyce argues that the evidence was insufficient to prove guilt beyond a reasonable doubt. However, the facts and circumstances of the case provide sufficient evidence to support a conviction for murder. The testimony of Sergeant Kelly helped to establish that a shooting occurred in the truck cab. If the jury believed that a shooting did occur, then it could use Sergeant Kelly's testimony to connect Joyce's confession, the prison letters, the prison phone calls, the physical evidence, and Joyce's threats to establish that Joyce did murder Tim. This evidence was sufficient to support a conviction for murder. Joyce's argument is simply a request for this court to reweigh the evidence, which we will not do. *Jones*, 783 N.E.2d at 1139.

### Conclusion

The trial court did not abuse its discretion by allowing Sergeant Kelly to testify regarding his opinion of how Tim was shot and a crime concealed. The trial court properly admitted Joyce's confession, prison phone calls, and prison letters. The trial court did not err in excluding the other conversations on the CD. Additionally, the evidence was sufficient to support Joyce's conviction for murder.

Affirmed.

FRIEDLANDER, J., and ROBB, J., concur.