Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**LISA M. JOHNSON**
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Mar 25 2013, 9:36 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA


ALEJANDRO GOMEZ-AVILES,           )
                                  )
    Appellant-Defendant,          )
                                  )
      vs.                        )     No. 49A02-1209-CR-728
                                  )
STATE OF INDIANA,                 )
                                  )
    Appellee-Plaintiff.           )


APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-0910-FA-91237


**March 25, 2013**


**MEMORANDUM DECISION - NOT FOR PUBLICATION**


**KIRSCH, Judge**

Alejandro Gomez-Aviles ("Gomez-Aviles") appeals after a jury trial from his convictions of two counts of child molesting,[1] each as a Class A felony, two counts of child molesting,[2] each as a Class C felony, and four counts of sexual misconduct with a minor,[3] each as a Class C felony. Gomez-Aviles presents the following restated issues for our review: whether fundamental error occurred in the admission of Gomez-Aviles's confession because there was no admissible evidence establishing the *corpus delicti* of the offenses; whether there is sufficient evidence to establish the age of the victim to support four of his convictions; and, whether the prosecutor committed misconduct.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

On October 29, 2009, the State charged Gomez-Aviles with two counts of Class A felony child molesting, one count of Class B felony incest, two counts of Class C felony child molesting, and four counts of Class C felony sexual misconduct with a minor. At the conclusion of the jury trial, which began on March 2, 2010, the jury found Gomez-Aviles guilty on all counts. On March 26, 2010, the trial court vacated Gomez-Aviles's conviction of Class B felony incest. The trial court sentenced Gomez-Aviles to concurrent and consecutive sentences, which in the aggregate, totaled thirty-eight years of imprisonment.

---

[1] *See* Ind. Code § 35-42-4-3(a).

[2] *See* Ind. Code § 35-42-4-3(b).

[3] *See* Ind. Code § 35-42-4-9(a).

2

The facts supporting the jury's verdict reflect that Gomez-Aviles is the biological father of I.V., born on March 14, 1994, and L.V., born on June 6, 1995. Hillary Pyle ("Pyle") is a special education teacher at Lawrence North High School in Indianapolis, Indiana. In 2009, L.V. was one of Pyle's students. On October 27, 2009, during a conversation between Pyle and L.V. concerning her recent low test scores, Pyle asked L.V. if there was anything going on at home. When L.V. nodded, Pyle removed L.V. from the classroom to the hallway to ask her additional questions. Pyle asked L.V. if anyone at home could be in trouble, to which L.V. again nodded. Pyle inquired if L.V. felt comfortable speaking with her, and L.V. indicated that she was. Over Gomez-Aviles's initial hearsay objection, Pyle's testimony that L.V. told Pyle that she and her father would be alone at home that night and that she did not feel comfortable about going home under those circumstances was admitted under the state-of mind exception to the hearsay rule. On cross-examination, Pyle testified that L.V. told Pyle that her father, Gomez-Aviles, had been touching her and that he had gotten more physical with her. On re-direct examination, Pyle testified that L.V. told her that she and her father had engaged in intercourse. Pyle then took L.V. to see Kari Bordner ("Bordner"), a school guidance counselor.

Bordner met with L.V. to discuss the things that were happening in L.V.'s home. L.V. told her that she was not doing well in school and was upset because things were going on in her home. Bordner testified that L.V. told her that there was inappropriate activity going on with her father, Gomez-Aviles. Bordner described L.V.'s demeanor as very embarrassed and said that L.V. did not easily make eye contact with her, preferring

instead to look at the floor. Bordner further testified that L.V. said she was afraid to go home because she was going to be at home alone with her father.

On cross-examination, Bordner testified that L.V. requested to speak with I.V. and that I.V. came to Bordner's office. Bordner explained to I.V. that L.V. would not be riding the bus home and asked I.V. if she wanted to ride the bus home. I.V. indicated to Bordner that she did want to ride the bus home. I.V. also told Bordner that she was aware of the problems between L.V. and Gomez-Aviles, their father. I.V. did not have any discussion with Bordner at that time about any problems she might have been having at home.

On re-direct examination, Bordner testified that L.V. stated that the inappropriate activity had been going on since she was in middle school as an eighth grader. L.V. told her that the activity had stopped and recently started again. On re-cross examination, Bordner testified that L.V. told her that she had sexual intercourse with her father, Gomez-Aviles. I.V. did not indicate to Bordner that she had sexual intercourse with her father.

After speaking with L.V., Bordner contacted the local child protective services ("CPS") and was told to keep L.V. off of the school bus. While waiting for someone from CPS to arrive, Bordner left her office so that L.V. and I.V. could have a conversation. When she returned to the room, the girls were crying, but I.V. maintained that she wanted to go home.

Bordner stayed with L.V. in her office until Trina Hawkins-Staten ("Hawkins-Staten"), an investigator with CPS, came to the school to pick up L.V. Hawkins-Staten

4

transported L.V. to her office to conduct an interview. Hawkins-Staten told L.V. that she was going to ask her some questions about the allegations. In English, L.V. then told Hawkins-Staten that her father had touched her, and that the touching occurred over the weekend, but that she felt more comfortable speaking in Spanish. At that point, Hawkins-Staten turned the questioning over to Lily Hawkins ("Lily"), a forensic child interviewer for the Marion County Prosecutor's Office and for CPS.

I.V. spoke briefly with Hawkins-Staten and told her that she knew something had happened to L.V. because L.V. had told her. During their approximately five-minute interview, I.V. made a brief disclosure to Hawkins-Staten. Hawkins-Staten also referred I.V. to Lily.

Lily testified that Spanish is her native language, that she was asked to interview L.V. because of a language barrier, and that she had no idea what the allegation was prior to the interview. Lily stated that L.V. was scared when she spoke with her because L.V. was afraid of what her father had done and that her family would not believe what had happened to her. After the interview, L.V. was reunited with I.V. and her mother, but they were separated at one point because L.V.'s mother and sister did not believe L.V.'s allegations.

Indianapolis Metropolitan Police Detective Ann a Humkey ("Detective Humkey") interviewed Gomez-Aviles on the evening of October 27, 2009. Gomez-Aviles was advised of his rights in Spanish and engaged in a colloquy with the interpreter and

Detective Humkey about his *Miranda* rights[4]. Gomez-Aviles indicated that he understood those rights and signed the form, which was written in Spanish. The interview was videotaped, and that videotape was admitted at trial as State's Exibit 1. During the interview with Gomez-Aviles, Detective Humkey learned that Gomez-Aviles was born on January 9, 1971. Although much of the interview was translated from Spanish to English, and vice versa, Gomez-Aviles spoke in English during portions of the interview, and sometimes began answering the questions before they were translated into Spanish for him. Gomez-Aviles admitted to molesting L.V. by grabbing her breasts at times, to touching L.V. on her vagina, and to rubbing his penis on her vagina. He admitted having a discussion with L.V. about what it was like to have orgasms. Gomez-Aviles also admitted to molesting I.V. by fondling her breasts and genitals.

At trial, L.V. recanted the statements she made to her teacher, counselor, and others, claiming that she had lied in order to gain more freedom at home. In particular, she claimed to be upset that her father, Gomez-Aviles, would not allow her to go out with friends or to talk with them on the telephone. L.V. denied that Gomez-Aviles ever sexually molested her. L.V. acknowledged, however, that she had told Lily that Gomez-Aviles had sexually touched her by putting his fingers inside her vagina, and that these incidents had begun when she was thirteen. L.V. admitted that she had told Lily that she had told I.V. about Gomez-Aviles touching her. She also admitted that she told Lily, Bordner, and Pyle that the last time Gomez-Aviles had molested her was on October 24, 2009. She admitted that she told them that during that incident Gomez-Aviles had held

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

her down, unzipped his pants, pulled out his penis, and moved on her like he was having sexual intercourse with her, stopping only when he ejaculated, and that this occurred in spite of L.V.'s cries for him to stop. L.V. further admitted that she told Lily that Gomez-Aviles talked to L.V. about having orgasms.

I.V. also testified at trial and recanted her statements that Gomez-Aviles sexually molested her. I.V. stated that she lied about the molestations to support her sister because their father did not allow them have the freedom to go out with friends or talk with them on the telephone. I.V. admitted, however, that she told Hawkins-Staten that Gomez-Aviles had touched her on her vagina on two occasions when she was fourteen.

Pyle testified that after she received her subpoena to testify at trial, and upon the advice of a school counselor, she told L.V. that she would be present at the trial to testify. Pyle testified that L.V. told her that she was going to lie in court and testify that Gomez-Aviles never sexually molested her. Gomez-Aviles now appeals.

**DISCUSSION AND DECISION**

Gomez-Aviles argues that the admission of his videotaped confession constituted fundamental error because the State had failed to establish the *corpus delicti* of the crimes alleged. The State argues that this claim has been waived because Gomez-Aviles lodged a different objection at trial. *See Clark v. State*, 978 N.E.2d 1191, 1194 (Ind. Ct. App. 2012) ("a defendant may not argue one ground for objection at trial and then raise new grounds on appeal"). At trial, the State called Detective Humkey to the stand to identify State's Exhibit 1, Gomez-Aviles's videotaped confession. Counsel for Gomez-Aviles objected to the admission of the videotaped confession on the ground that his client's

7

*Miranda* warnings were not correctly interpreted for him. Counsel requested a hearing on a motion to suppress the videotaped confession. The trial court denied the request for a hearing on the oral motion to suppress because it was untimely, *viz.*, made in the middle of the jury trial, and admitted the exhibit. The trial court, however, offered to reconsider its ruling on the admission of the videotape in evidence.

Counsel for Gomez-Aviles made the same objection when the State sought to admit State's Exhibit 2, the advice of rights form that was written in Spanish. Gomez-Aviles claimed that his *Miranda* rights were not correctly interpreted. The trial court overruled the objection and allowed the admission of the exhibit. The State then called the interpreter who was present during Gomez-Aviles's interview and asked about his qualifications as an interpreter. When the State moved to publish State's Exhibit 1, the trial court excused the jury to hold a hearing on the oral motion to suppress State's Exhibit 1. The trial court viewed the portion of State's Exhibit 1 during which Detective Humkey was present and the interpreter read and explained Gomez-Aviles's *Miranda* warnings to him. The trial court denied the motion to suppress and noted that the videotape showed the interpreter reading the form to Gomez-Aviles, that Gomez-Aviles asked questions about what was being read to him, and that he placed his signature under the portion of the form which indicated that he understood his rights and was waiving those rights. The trial court granted the State's request to publish State's Exhibit 1.

Waiver notwithstanding, we address Gomez-Aviles's argument regarding fundamental error. We have noted the following many times:

8

> The fundamental error doctrine is extremely narrow. To qualify as
> fundamental error, an error must be so prejudicial to the rights of the
> defendant as to make a fair trial impossible. Further, the error must
> constitute a blatant violation of basic principles, the harm, or potential for
> harm must be substantial, and the resulting error must deny the defendant
> fundamental due process.

*Rowe v. State*, 867 N.E.2d 262, 266 (Ind. Ct. App. 2007) (internal citations omitted).

Here, the claim is fundamental error due to the admission of evidence.

Trial courts have broad discretion in the admission of evidence. *Hines v. State*, 981 N.E.2d 150, 153 (Ind. Ct. App. 2013). The trial court's ruling on the admissibility of evidence is subject to review for an abuse of discretion. *Id*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic and effect of the facts and circumstances before the court. *Id*. Gomez-Aviles claims that the trial court abused its discretion by admitting his videotaped confession into evidence because the State had not established the *corpus delicti* for the offense.

"Proof of the *corpus delicti* means proof that the specific crime charged has actually been committed by someone." *Cherry v. State*, 971 N.E.2d 726, 730 (Ind. Ct. App. 2012) (quoting *Taylor v. State*, 236 Ind. 415, 421, 140 N.E.2d 104, 108 (1957)). We have stated the following about the *corpus delicti* rule:

> For a confession to be admitted into evidence, the State must establish the
> corpus delicti. The purpose for requiring proof of the corpus delicti is to
> prevent the admission of a defendant's confession to a crime that never
> occurred. The State is not required to prove the corpus delicti beyond a
> reasonable doubt, but must present independent evidence from which an
> inference may be drawn that a crime was committed. The corpus delicti
> need not be established prior to admission of the confession so long as the
> totality of independent evidence presented at trial establishes it. The corpus
> delicti may be established by circumstantial evidence.

9

*Id.* at 730-31 (quoting *Weida v. State*, 693 N.E.2d 598, 600 (Ind. Ct. App. 1998)) (internal citations omitted). "Circumstantial evidence may be the sole means of establishing the corpus delicti." *Hawkins v. State*, 884 N.E.2d 939, 945 (Ind. Ct. App. 2008) (citing *Jones v. State*, 701 N.E.2d 863, 866 (Ind. Ct. App. 1998)). "The independent evidence supporting the corpus delicti need not preclude every possible explanation of the circumstances." *Stevens v. State*, 691 N.E.2d 412, 424-25 (Ind. 1997).

Here, we have L.V.'s and I.V.'s accusations against their father, Gomez-Aviles. The accusations were made to witnesses who testified at trial about those accusations. After Pyle testified that L.V. nodded her head, presumably in the affirmative, Pyle further testified that she asked her if something was going on at home. Gomez-Aviles objected on hearsay grounds, and the trial court sustained the objection. The State argued that the purpose of the line of questioning was not to establish the truth of the matters asserted, but to show why Pyle proceeded as she did. Pyle then testified that she took L.V. out into the hallway and asked L.V. if someone at home could be in trouble. Pyle was allowed to testify without objection that L.V. nodded in the affirmative.

Pyle further testified on direct examination about L.V.'s demeanor and that she then contacted the school counselor. At that point, the State asked to approach the bench to revisit the hearsay issue. The State argued that the testimony was not hearsay because the State was not offering it for the truth of the matters L.V. asserted. Instead, the State argued that it was being offered to show why each of the witnesses proceeded in the manner in which they did. The trial court responded that "[t]he questions are in and what

she did was in, and so, you know, I'm not going to allow you, I'm not going to allow her to say what it was that she said." *Tr.* at 239.

We pause to acknowledge that the State's reason offered in support of the admission of the testimony was to show the course-of-conduct or course-of-investigation of the witnesses. We have questioned that rationale for the admission of testimony for that limited purpose, especially in cases such as this where the genesis, development, or quality of the investigation were not in issue. *See generally, Kindred v. State*, 973 N.E.2d 1245, 1252-55 (Ind. Ct. App. 2012) (course-of-investigation evidence is prejudicial where there is no conceivable relevance apart from proving facts asserted in statements, and victim's credibility was in question for numerous reasons). Assuming arguendo that the admission of the statements for that purpose was erroneous, we find that such error was harmless error, for the reasons which follow.

Following the sidebar discussion, the State asked Pyle if L.V. said anything about her state of mind. Pyle responded that L.V. stated that she did not want to go home because she would be alone with her father, and she did not feel comfortable about that. Gomez-Aviles objected to the testimony and asked that the answer be stricken. The State argued that the answer was admissible under the hearsay exception for then-existing state of mind. The trial court overruled the objection and allowed the answer to stand.

Although we agree with Gomez-Aviles's argument that the exception did not apply because L.V.'s state of mind had not been placed at issue by Gomez-Aviles, that error does not support his claim that the *corpus delicti* had not been established. *See Bassett v. State*, 795 N.E.2d 1050, 1051-52 (Ind. 2003) (victim's state of mind may be

11

relevant where put in issue by defendant).  During Gomez-Aviles's cross-examination of Pyle, he elicited testimony from her that L.V. told her Gomez-Aviles was getting more physical with her.  On re-direct examination, Pyle testified that L.V. told her that she and Gomez-Aviles had engaged in intercourse.

"A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error."  *Kingery v. State*, 659 N.E.2d 490, 494 (Ind. 1995).  Because our Supreme Court has suggested both that invited error does not support a fundamental error analysis, and has chosen to engage in the determination whether invited error constitutes fundamental error, we will address that issue here.  *See Roach v. State*, 695 N.E.2d 934, 942 (Ind. 1998) (defendant who introduced evidence of his own prior conviction invited error and State's additional brief reference to conviction during closing argument is not fundamental error); *Kingery*, 659 N.E.2d at 494 (defendant's introduction of improper evidence invited error and that type of error is not fundamental error).

Bordner testified without objection that L.V. told her that inappropriate activity between L.V. and her father was going on at home.  Bordner further testified that L.V. was embarrassed, looked at the floor, and had difficulty making eye contact with her.  L.V. told her that she was afraid that she was going to be at home alone with her father.  Bordner testified that L.V. told her that the inappropriate activity had begun when she was in middle school as an eighth grader, and that the activity had stopped, but had recently resumed.  In response to an omitted question on cross-examination, counsel for Gomez-Aviles elicited Bordner's testimony that L.V. told her she had engaged in sexual

12

intercourse with her father. Bordner further testified that I.V. did not say that she had sex with her father.

Hawkins-Staten testified that when she picked L.V. up from school, L.V. stated in English that her father had touched her, but said she felt more comfortable speaking in Spanish. The interview notes from the interviews with L.V. and I.V. indicated that L.V. stated that the most recent touching had occurred over the weekend. I.V. indicated that she was aware that something was happening to L.V. because she had told her. Hawkins-Staten testified that when I.V. made a brief disclosure to her, she referred her to Lily for an interview in Spanish.

> If the erroneously admitted evidence is merely cumulative of other evidence in the record, it is harmless error and not grounds for reversal. If a conviction is supported by substantial independent evidence of guilt which satisfies the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction, the error is harmless.

*Lee v. State*, 967 N.E.2d 529, 539 (Ind. Ct. App. 2012) (internal citations omitted). We reject Gomez-Aviles's claim that there is no evidence in the record to establish the *corpus delicti* of the offenses. Both L.V. and I.V. admitted making those statements; however, L.V. and I.V. recanted at trial. At that point, however, the jury was left to resolve the issue of the credibility of the witnesses, and their decision to recant the accusations did not negate the establishment of the *corpus delicti*. Nonetheless, L.V. and I.V. admitted that they made the accusations. Any erroneously admitted hearsay evidence was cumulative of other evidence in the record, which clearly establishes the *corpus delicti*, and would amount to harmless error. *See Lowery v. State*, 478 N.E.2d 1214, 1227-28 (Ind. 1985) ("It is well settled that any error in admission of evidence is harmless if the

13

same or similar evidence has been admitted without objection."); *Dygert v. State*, 569 N.E.2d 375, 376 (Ind. Ct. App. 1991) ("Otherwise inadmissible hearsay evidence may be considered for substantive purposes and is sufficient to establish a material fact at issue when the hearsay evidence is admitted without a timely objection at trial.").  Since the *corpus delicti* had been established, the admission of Gomez-Aviles videotaped confession did not constitute fundamental error.

The charging information against Gomez-Aviles in pertinent part alleged the following:

COUNT I

ALEJANDRO GOMEZ-AVILES, on or about or BETWEEN JUNE 6, 2008 AND OCTOBER 27, 2009, being at least twenty-one (21) years of age, did perform or submit to deviate sexual conduct by inserting an object, that is: FINGER(S) into the VAGINA of [L.V.], a child who was then under the age of fourteen (14) years, that is THIRTEEN (13) years of age;

COUNT II

ALEJANDRO GOMEZ-AVILES, on or about OR BETWEEN JUNE 6, 2008 AND OCTOBER 27, 2009, being at least twenty-one (21) years of age, did perform or submit to deviate sexual conduct by inserting an object, that is: FINGER(S), into the VAGINA of [L.V.], a child who was then under the age of fourteen (14) years, that is:  THIRTEEN (13) years of age;

. . . .

COUNT IV

ALEJANDRO GOMEZ-AVILES, on or about OR BETWEEN JUNE 6, 2008 AND OCTOBER 27, 2009, did perform or submit to any fondling or touching with [L.V.], a child who was then under the age of fourteen (14) years, that is:  THIRTEEN (13) years of age, with intent to arouse or satisfy the sexual desires of [L.V.] and/or the sexual desires of ALEJANDRO GOMEZ-AVILES;

14

COUNT V

ALEJANDRO GOMEZ-AVILES, on or about OR BETWEEN JUNE 6, 2008 AND OCTOBER 27, 2009, did perform or submit to any fondling or touching with [L.V.], a child who was then under the age of fourteen (14) years, that is: THIRTEEN (13) years of age, with intent to arouse or satisfy the sexual desires of [L.V.] and/ or the sexual desires of ALEJANDRO GOMEZ-AVILES;

COUNT VI

ALEJANDRO GOMEZ-AVILES, on or about OR BETWEEN JUNE 6, 2008 AND OCTOBER 27, 2009, being at least twenty-one (21) years of age, did perform or submit to any fondling or touching with [L.V.], a child who was at least fourteen (14) years of age, but under the age of sixteen (16) years, that is: FOURTEEN (14) years of age, with intent to arouse or satisfy the sexual desires of [L.V.] and/or the sexual desires of ALEJANDRO GOMEZ-AVILES;

COUNT VII

ALEJANDRO GOMEZ-AVILES, on or about OR BETWEEN JUNE 6, 2008 AND OCTOBER 27, 2009, being at least twenty-one (21) years of age, did perform or submit to any fondling or touching with [L.V.], a child who was at least fourteen (14) years of age, but under the age of sixteen (16) years, that is: FOURTEEN (14) years of age, with intent to arouse or satisfy the sexual desires of [L.V.] and/or the sexual desires of ALEJANDRO GOMEZ-AVILES;

COUNT VIII

ALEJANDRO GOMEZ-AVILES, on or about OR BETWEEN MARCH 14, 2008 AND OCTOBER 27, 2009, being at least twenty-one (21) years of age, did perform or submit to any fondling or touching with [I.V.], a child who was at least fourteen (14) years of age, but under the age of sixteen (16) years, that is; FOURTEEN (14) and/or FIFTEEN (15) years of age, with intent to arouse or satisfy the sexual desires of [I.V.] and/or the sexual desires of ALEJANDRO GOMEZ-AVILES;

COUNT IX

ALEJANDRO GOMEZ-AVILES, on or about OR BETWEEN MARCH 14, 2008 AND OCTOBER 27, 2009, being at least twenty-one (21) years

of age, did perform or submit to any fondling or touching with [I.V.], a child who was at least fourteen (14) years of age, but under the age of sixteen (16) years, that is: FOURTEEN (14) and/or FIFTEEN (15) years of age, with intent to arouse or satisfy the sexual desires of [I.V.] and/or the sexual desires of ALEJANDRO GOMEZ-AVILES[.]

*Appellant's App.* at 34-37.

During his confession, Gomez-Aviles admitted that he grabbed L.V.'s breasts at times, and that he touched L.V.'s vagina several times, and that he rubbed his penis on her vagina. Gomez-Aviles admitted that he grabbed I.V.'s breasts and genitals. He stated that he had ejaculated on top of L.V. a couple of times and had cleaned himself up with toilet paper.

L.V. admitted that she told Lily that her father's inappropriate touching of her had begun when she was thirteen years old and that, at times, the touching involved digital penetration of her vagina. L.V. further admitted that she told Lily the most recent occasion had occurred the weekend prior to telling her teachers. She acknowledged that it had occurred on October 24, 2009. I.V. admitted that she had told Hawkins-Staten that she told her that Gomez-Aviles had inappropriately touched her twice when she was fourteen years old.

In sum, the testimony presented at trial, including Gomez-Aviles's confession, establishes that he molested L.V. as charged in Counts I, II, IV and V when L.V. was thirteen years old. Gomez-Aviles has waived any challenge alleging a defect in the charging informations because he failed to file a motion to dismiss those counts no later than twenty days prior to the omnibus date. *See* Ind. Code § 35-34-1-4(b)(1) (motion to dismiss on this ground shall be filed no later than twenty days prior to omnibus when

16

charged with felony); *Truax v. State*, 856 N.E.2d 116, 123 (Ind. Ct. App. 2006) (charging informations adequately apprised defendant of charges against him and did not constitute fundamental error). The fact that the charging informations alleged a time frame for the commission of those offenses that extended beyond L.V.'s fourteenth birthday, does not constitute fundamental error. Gomez-Aviles was adequately apprised of the charges against him such that he could prepare his defense.

Gomez-Aviles has waived his argument alleging prosecutorial misconduct. He claims on appeal that the State impermissibly called L.V. and I.V. to the witness stand for the sole purpose of impeaching their testimony recanting their allegations against Gomez-Aviles. He did not object to the State calling L.V. and I.V. as witnesses.

> If a defendant properly raises and preserves the issue of prosecutorial misconduct, then the reviewing court determines (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. Where a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim. More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error.

*Coleman v. State*, 946 N.E.2d 1160, 1166 (Ind. 2011) (internal citation omitted). Here, we need not engage in the determination of whether fundamental error occurred, because Gomez-Aviles has not carried his burden of demonstrating prosecutorial misconduct. L.V. and I.V. testified at trial in a manner that was contradictory to or inconsistent with their earlier statements to others. Although the prosecution may not allow testimony known to be false to be admitted in evidence, the existence of contradictory or inconsistent testimony by a witness does not necessarily amount to perjury. *Id*. at 1167.

17

"While the knowing use of perjured testimony may constitute prosecutorial misconduct, contradictory or inconsistent testimony by a witness does not constitute perjury." *Timberlake v. State*, 690 N.E.2d 243, 253 (Ind. 1997).

Affirmed.

MATHIAS, J., and CRONE, J., concur.